IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TROY LANCE HARDING, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION |
| | ) No. 17-1135-JWL |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I. Background

Plaintiff argues that the Administrative Law Judge (ALJ) erred in weighing the record medical opinions including those of his treating physician, Dr. Imlay, and of the psychologist who examined him at the request of the state agency, Dr. Hackney, and failed to adequately explain why he adopted some of the doctors' limitations and not

others; erred in posing an inadequate hypothetical question to the vocational expert; and erred in her credibility determination. He seeks remand for further administrative proceedings.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless,

the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of

his past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court considers the issues in the order presented in Plaintiff's Brief and finds no error in the ALJ's decision.

## II. Medical Opinions and RFC Assessment

### A. Standard to Evaluate Medical Opinions

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources[1] that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. § 404.1527(a)(2). Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. Id. § 404.1527(c);

---

[1]The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. §§ 404.1502, 416.902.

"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship. Id.

"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion. Id.

4

SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2017). A physician who has treated a patient frequently over an extended period (a treating source) is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2010) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003)

5

(citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. § 404.1527(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. Id. 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing

so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

Although an ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004). "And the ALJ's RFC assessment is an administrative, rather than a medical determination." McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing Social Security Ruling (SSR) 96-05p, 1996 WL 374183, at *5 (July 1996)). Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. § 404.1545(a). Moreover, the final responsibility for determining RFC rests with the Commissioner. 20 C.F.R. §§ 404.1527(e)(2), 404.1546.

The Commissioner issued SSR 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits." West's Soc. Sec. Reporting Serv., Rulings 143 (Supp. 2017). The ruling includes narrative discussion requirements for the RFC assessment. Id. at 149. The discussion is to cite specific medical facts and nonmedical evidence to describe how the evidence supports each conclusion, discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform. Id. The discussion must include an explanation how any ambiguities and material inconsistencies

7

in the evidence were considered and resolved. Id. The narrative discussion must include consideration of the credibility of the claimant's allegations of symptoms and consideration of medical opinions regarding his capabilities. Id. at 149-50. If the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why she did not adopt the opinion. Id. at 150.

"[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (citing Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004)); Wall, 561 F.3d at 1068-69). The narrative discussion required by SSR 96-8p to be provided in an RFC assessment does not require citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation assessed. Castillo v. Astrue, No. 10-1052, 2011 WL 13627, *11 (D. Kan. Jan. 4, 2011). "What is required is that the discussion describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment." Id. See also, Thongleuth v. Astrue, No. 10-1101-JWL, 2011 WL 1303374, *13 (D. Kan. Apr. 4, 2011). There is no need for the Commissioner to base the limitations in his RFC assessment upon specific statements in the medical evidence or opinions in the record.

### B. The ALJ's Findings

The ALJ found that Plaintiff is able to perform a range of medium work, but that he has mental limitations to understand, remember, and carry out only simple instructions, make only simple work-related decisions, and perform simple, routine tasks consistent with work of an SVP (specific vocational preparation level) of 1-2. (R. 24).

8

She found that Plaintiff can interact only occasionally, can perform only work that does not require interaction or coordination with others to complete job tasks, and can perform only work that does not involve frequent changes in the work setting. Id. In her RFC assessment, the ALJ summarized Plaintiff's allegations, the record medical evidence and other evidence, and the opinion evidence, including the medical opinions. (R. 24-27). At the end of her discussion, the ALJ concluded:

> In sum, after a thorough review of the evidence, the claimant's allegations and testimony, forms completed at the request of Social Security, the objective medial [sic] findings, medical opinions, and other relevant evidence, the undersigned finds the claimant capable of performing work consistent with the residual functional capacity established in this decision.

(R. 27).

The ALJ considered Dr. Imlay's treating source opinion and accorded it limited weight because his restrictions do not find a basis in the record evidence--particularly the "unremarkable examination findings after the stenting procedure," his opinion is inconsistent with the record evidence, and is inconsistent with Plaintiff's "activities such as mowing the lawn with a lawn mower." (R. 26). She accorded very limited weight to the opinions of Dr. Ammar and Dr. Khicha, who operated on Plaintiff, because they "provided explicitly temporary restriction," which have expired. (R. 27). The ALJ discounted the state agency medical consultant's opinion that Plaintiff's impairments are not severe because "the consultant did not consider the evidence related to the claimant's coronary artery disease and stenting procedure." Id.

The ALJ also considered the medical opinions regarding Plaintiff's mental condition:

9

> Dr. Hackney examined the claimant in February of 2015. Based on this examination, Dr. Hackney concluded that the claimant is unable to maintain adequate relationships with others and unable to understand and perform simple tasks in an average amount of time. He concluded that the claimant cannot sustain concentration for routine activity and would not be able to meet the demands of an average work schedule. However, the undersigned is not persuaded that this opinion is consistent with the specific findings and observations in Dr. Hackney's report. Although the claimant demonstrated difficulty with attention and concentration, requiring redirection and repeating of instructions, the claimant's IQ was in the borderline range and he scored 28 out of 30 on the mini mental state exam. Further, Dr. Hackney is basing his conclusions on a one time evaluation of the claimant, conclusions that are inconsistent with the improved functioning demonstrated in the claimant's mental health treatment records. For these reasons, the opinion of Dr. Hackney is given limited weight.
>
> Greater weight is given to the opinions of the state agency psychological consultants. These conclusions are more consistent with the claimant's intellectual functioning, mini mental status exam performance, and improved functioning with treatment. These opinions have been given substantial weight in concluding that the claimant is able to perform simple, routine work involving limited interaction with others.

(R. 27) (citations omitted).

### C. Discussion

Much of Plaintiff's argument asks the court to reweigh the evidence and arrive at a conclusion different than did the ALJ. However, as noted above, it may not do so. Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172; see also, Bowling, 36 F.3d at 434 (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell, 862 F.2d at 475)). The question is whether the ALJ's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

10

Perales, 402 U.S. at 401. The court finds that it is. To the extent that Plaintiff makes other, specific allegations of error in the decision below, the court addresses them.

Plaintiff argues it was error for the ALJ to find "that Plaintiff's coronary artery disease warranted restrictions against heavy work but not medium work" because that "finding had no basis in the medical record and was not supported by any medical opinion [since] no State agency consultant reviewed the medical evidence after" discovery of Plaintiff's arteriosclerosis and surgery. (Pl. Br. 12). Plaintiff's argument ignores two important facts. First, the ALJ found that although Plaintiff's "coronary artery disease does warrant restrictions against heavy work, his unremarkable examination findings [after his surgery] do not suggest and [sic] inability to perform medium work." (R. 25). This finding on its face clearly has a basis in the medical record.

Second, and perhaps most importantly, there is no requirement in law, or in the facts of this case, that the state agency consultants review all the medical evidence before an ALJ makes her decision. As noted above, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." Howard, 379 F.3d at 949. "And the ALJ's RFC assessment is an administrative, rather than a medical determination." McDonald, 492 F. App'x at 885 (citing SSR 96-05p, 1996 WL 374183, at *5 (July 1996)). Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." Dixon, No. 98-5167, 1999 WL 651389, at *2; 20 C.F.R. § 404.1545(a).

11

Plaintiff argues that the ALJ's finding of "unremarkable examination findings after his stenting procedure," is erroneous because the record after his procedure reveals "continued fatigue with dizziness and decreased appetite," "burning discomfort in left foot on neuro exam," "depressed mood," "foot pain, neck pain, left arm pain going numb, rectal bleeding," and "a fall onto rocks while at his daughter's home." (Pl. Br. 14) (citing R. 468-72, 521-23, 528, 530, 532). However, the evidence to which the ALJ refers reveals essentially normal physical and cardiac examinations, and the evidence to which Plaintiff cites confirms the ALJ's finding with few exceptions. Most of the evidence to which Plaintiff cites is his report of symptoms for which there is no objective confirmation on physical examination. The exceptions are discomfort in his left foot which is attributable to a gunshot wound occurring three years before his alleged onset of disability, and falling on the rocks at his daughter's house which was evidenced on physical examination by "l[igh]t [b]ruising r[igh]t chest wall." (R. 521-22, 534). Moreover, the point of the ALJ's finding is that there is no lingering deficiency resulting from his stenting procedures, not that there is no limitation whatsoever. In context, the evidence supports the ALJ's finding, and Plaintiff has not shown otherwise.

Plaintiff claims the ALJ erred in failing to find "that Plaintiff had limitations with regard to Wernicke-Korsakoff syndrome," and in failing to mention the syndrome. (Pl. Br. 15) (citing R. 219, 381, 389-90). The court finds no error. The evidence to which Plaintiff cites does not demonstrate the Plaintiff has Wernicke Korsakoff syndrome which the ALJ should have noted, much less that she should have assessed limitations resulting therefrom. Page 219 of the record is Plaintiff's disability report on appeal, in

which he stated, that he had "been told by Dr. Gorcos [that] she felt I had Warnickes [sic] encephalopathy before but now it's Kossoroff's [sic] which I understand is permanent." (R. 219). Page 381 of the record is a Harper Hospital District 5 treatment note dated October 20, 2014, in which Dr. Imlay made an "Assessment" of "Wernicke Korsakoff Syndrome" without further comment or explanation. (R. 381). Finally, the records at 389-90 are almost illegible, without any discernable reference to Wernicke Korsakoff syndrome. (R. 389-90). Finally, Dr. Imlay's medical source statement includes a nearly illegible, and bare diagnosis of "Wernicke – Korsakoff synde [sic] profound w/ Cognitive Deficits." (R. 509). There is simply nothing here which demonstrates that the ALJ should have assessed limitations resulting from Wernicke Korsakoff syndrome, or that she should have recognized it as a medically determinable impairment in this case. Moreover, the reasons the ALJ provided for discounting Dr. Imlay's opinion were that it is not consistent with the record evidence, and that Dr. Imlay's limitations lack support from the record. To be sure, Plaintiff has latched onto three relatively obscure and indecipherable references in the record, from which he has built a narrative suggesting a potential for disabling impairment, but he has not demonstrated that his view is the only view permitted by the evidence as a whole. Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even

13

though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) (same).

Plaintiff makes much of his tremors and argues that the ALJ did not even mention them in her decision. (Pl. Br. 16). That argument is demonstrably wrong, because in summarizing Dr. Hackney's report, the ALJ expressly noted Dr. Hackney's explanation that Plaintiff's IQ "scores likely would have been higher were it not for the claimant's tremors." (R. 25). Dr. Hackney's report reveals that on the portion of the IQ test regarding "coding," Plaintiff "simply quit after the first line because he was shaking so much that he could not complete anymore." (R. 394). He expressed his opinion that if Plaintiff had continued despite his tremors, his full scale IQ score would probably reflect him functioning higher "at the mid range of the borderline range of intelligence." Id. Moreover, the ALJ's decision is replete with references to Plaintiff's longstanding history of excessive alcohol use and alcohol dependence. (R. 21-26). Finally, the ALJ found that limitations from Plaintiff's alcohol dependence do not support a finding of disability, and, therefore, she found that alcohol dependence was not a factor material to a determination of disability. (R. 22, 26).

Plaintiff argues the fact that Dr. Hackney's report was based on a one-time evaluation of Plaintiff "is not by itself a basis for rejecting [a nontreating source opinion]—otherwise the opinions of consultative examiners would essentially be worthless." (Pl. Br. 17). This argument has a certain appeal, but it ignores that this reason was not "by itself," it was not the only reason given to discount Dr. Hackney's

14

report. The ALJ also found that Dr. Hackney's opinion was not consistent with the findings in his report, Plaintiff was at least in the borderline range of intellectual functioning, and he scored 28 out of 30 on the mini mental status exam, and Dr. Hackney's conclusions "are inconsistent with the improved functioning demonstrated in the claimant's mental health treatment records. (R. 27).

Finally, Plaintiff argues that the ALJ's RFC assessment was inadequate because the ALJ failed to discuss the uncontroverted evidence he chose not to rely upon, or the significantly probative evidence he rejected. But Plaintiff has not shown <u>uncontroverted</u> evidence which was not relied upon by the ALJ, or <u>significantly probative</u> evidence she rejected. While the ALJ clearly assigned weight to the evidence differently than Plaintiff does, Plaintiff has not shown that the ALJ ignored parts of the evidence or that the record evidence will not support the weight assigned. Plaintiff has shown no error in the ALJ's RFC assessment.

Because Plaintiff has failed to show error in the RFC assessment, and because the hypothetical questioning was based on that RFC assessment, Plaintiff does not show that the hypothetical questioning was inadequate or that the testimony elicited in response was erroneously relied upon.

## III.  Credibility

Plaintiff claims that although the ALJ noted the correct legal standard for evaluating credibility, she did not apply it properly, did not set forth specific reasons for her credibility determination, did not affirmatively link her findings to substantial evidence, and failed to engage in any meaningful assessment of credibility. (Pl. Br. 21).

15

She argues that rather than properly applying the credibility factors, the ALJ based her determination "upon only those facts which supported her position as opposed to the totality of the evidence in the record," and "ignored substantial evidence that clearly supported" Plaintiff's allegations. Id. at 24.

### A. Standard for Determining Credibility

The court's review of an ALJ's credibility determination is deferential. Credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

The framework for a proper credibility analysis is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). An ALJ must consider (1) whether the claimant has established a symptom-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both

16

objective and subjective, the claimant's symptoms are in fact disabling. See, Thompson, 987 F.2d at 1488 (explaining the Luna framework). The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating credibility: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii). The court also has recognized a non-exhaustive list of factors which overlap and expand upon the factors promulgated by the Commissioner. Luna, 834 F.2d at 165-66. These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).

### B. The ALJ's Findings

The ALJ explained the standard for evaluating a claimant's allegation of symptoms, and she summarized Plaintiff's allegations. (R. 24). She found that Plaintiff's

> statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's

> ability to work only to the extent they can reasonably be accepted as
> consistent with the objective medical and other evidence.

(R. 24).

Thereafter, she pointed out numerous inconsistencies between the record evidence and Plaintiff's allegations. She noted that after his surgeries Plaintiff's "cardiac examinations have consistently been normal" and that "restoration of the claimant's dorsalilc pedic pulses after stenting and his normal cardiac examinations are not consistent with the degree of limitation alleged by the claimant." (R. 25). She noted that Plaintiff's mental health improved with treatment, but that he reported going on "benders" thereafter. (R. 25). She noted that the record indicated Plaintiff's "last job ended voluntarily, not due to his impairments." <u>Id.</u> at 26. She found that Plaintiff's alleged difficulties with personal care "are not consistent with [his] unremarkable examination findings after his stenting procedure," and that he "is able to mow his three acres when his grandchildren do not and [to] travel out of town to help his daughter." <u>Id.</u>

### **C.** **Discussion**

Giving the credibility determination due deference, the court finds no error. The ALJ provided specific reasons for her credibility finding, and those reasons are affirmatively linked to substantial evidence ("such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Perales</u>, 402 U.S. at 401.) Although Plaintiff weighs the evidence differently than did the ALJ, he has not shown that the evidence points but one direction. Moreover, Plaintiff has not shown that the ALJ ignored the evidence. She addressed the medical opinions and explained her reasons

for discounting them, and she acknowledged Plaintiff's tremors and alcohol dependence although she did not accord it the weight Plaintiff suggests it deserves and did not find it disabling.

Plaintiff has shown no error in the Commissioner's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated August 2, 2018, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**